### THE OVERSEERS OF THE POOR OF BLENHEIM *against* THE OVERSEERS OF WINDHAM.

IN ERROR, from the general sessions of the peace of the county of *Greene*. This was an appeal from the order of the justices of the town of *Windham*, in the county of *Greene*, for the removal of *Julius Agars*, a pauper, from that town to the town of *Blenheim*, in the county of *Schoharie*, to the general sessions of the peace of the county of *Greene*. In 1777, *Agars* came into the town of *Woodstock*, in that part of it which is now *Windham*, and about 20 years ago purchased of *Johannes Hardenbergh* 100 acres of land for the consideration of 75 dollars, for which land he received a deed in fee ; but the deed, as the witness testified, was lost. The person who drew the deed stated that the land was described as situated in the *Hardenbergh* patent, in the town of *Woodstock* and county of *Ulster ;* but that in fact, the land lay in the town of *Blenheim*, in *Schoharie* county, and south of a line run for the north line of the *Hardenbergh* patent, called *Coxe's* line. After the purchase, *Agars* took possession of the land, which was wild and covered with wood, and improved part of it, for two seasons; but, except during that time, when he boarded in *Blenheim*, he had resided in that part of *Woodstock* which is now *Windham*, since 1777, to the time of the order for his removal. It appeared that at the time of the conveyance to *Agars*, the land was claimed as part of *Due's* manor, and half of it was included in a lease to one *Bartlett*, and his son testified that he was well acquainted with the bounds, &c. and that the 100 acres purchased by *Agars*, lay within

A. in 1777, came into the town of W. and, about 20 years ago, purchased 100 acres of land in the *Hardenbergh* patent, situate in the town of B.; he cleared part of the land and improved part of it, for two seasons, and boarded, at that time, in B., and about 10 years afterwards sold all his interest in the land ; but during all the time, from 1777 to the present day, except the time he boarded in B., he continued to reside in W.

It was held, that the land not lying in the *Hardenbergh* patent, no "estate or interest," in the town of B. passed by the deed; and that the act of the pauper in

clearing the land, and boarding at the time in B., did not change his place of settlement, which still remained in W.

ALBANY,
Jan. 1814.

OVERSEERS OF
BLENHEIM
v.
OVERSEERS OF
WINDHAM.

Due's manor, and in the town of *Blenheim.* It was further proved, that about 12 years after *Agars* purchased the 100 acres, he sold all his interest and title in the land for a horse, to *Alexander Boyd,* who had previously purchased the title of *Due.*

The appellants offered to prove, by the statutes, the boundaries of the counties of *Ulster* and *Schoharie,* and of the towns of *Woodstock, Blenheim* and *Windham,* and for that purpose also offered in evidence the map of the state; but this evidence was overruled by the court, who adjudged that the *pauper's* last place of legal settlement was in the town of *Blenheim,* in the county of *Schoharie,* and confirmed the order of the justices.

*Per Curiam.* The legal settlement of the *pauper* was origi-nally in *Windham,* and the only question is, whether he acquired a settlement in *Blenheim,* by the purchase of the 100 acres of land of *Johannes Hardenbergh,* for the consideration of 75 dollars, which was paid. This deed was taken about 20 years ago, and the land was described as lying in the *Hardenbergh* patent in *Ulster* county, and it was understood to lie south of *Coxe's* line. The pauper cleared, in one season, a part of the land and put in a crop of grain, which he gathered the next year. While he was so at work, he boarded in the town of *Blenheim,* but he resided there in no other way, nor at any other time; and from 1777, until his removal, he continued to reside in *Windham.* The 100 acres were at the time claimed adversely, and were in part covered by a lease, and were, undoubtedly, a part of *Due's* manor, in *Schoharie* county, and lay north of the line of the *Hardenbergh* patent. The pauper afterwards sold his claim under the deed for a horse to one *Boyd,* who held under *Due's* title.

Here was evidently a mistaken purchase. The lands were sold as part of the *Hardenbergh* patent, and, in fact, they did not lie in that patent, and so no " *estate or interest*" in the town of *Blenheim* passed by the deed. Nor can the act of the pauper, in clearing a part, be deemed a title by possession in *Blenheim* sufficient to gain a residence. His domicil was never changed, and he only went occasionally on the land for a special purpose. The statute never meant that a settlement should be acquired by purchase, if no estate or interest known

and valid in law passed, and here none was intended to pass but what was covered by the *Hardenbergh* patent.

The purchase ought, therefore, to be disregarded, and the order of the sessions quashed.